DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Nadine K., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating her parental rights to Justin K. Appellant's counsel has submitted a request to withdraw pursuant to Anders v. California (1967), 386 U.S. 738, asserting that there are no meritorious issues for appeal.Anders sets forth the procedure to be followed by appointed counsel who desires to withdraw for *Page 2 
want of a meritorious, appealable issue. We have found that "the procedures enunciated in Anders, supra, are applicable to appeals involving the termination of parental rights." Morris v. Lucas CountyChildren Services Board (1989), 49 Ohio App.3d 86, 87.
 {¶ 2} In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. Id. at 744. See also, State v. Duncan (1978),57 Ohio App.2d 93. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
 {¶ 3} In this case, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. In support of his request, counsel for appellant states that, after carefully reviewing the transcript and record of proceedings in the trial court, and after researching case law and statutes relating to potential issues, counsel was unable to find an arguable, non-frivolous issue for appeal. Appellant has not filed a brief, however, counsel for appellant sets forth the following potential issues: *Page 3 
 {¶ 4} "I. Appellant was denied effective assistance of counsel.
 {¶ 5} "II. The trial court's granting of LCCSB's motion for permanent custody was against the manifest weight of evidence.
 {¶ 6} "III. LCCSB Failed to use reasonable efforts."
 {¶ 7} The facts giving rise to this appeal are as follows. On March 7, 2006, Lucas County Children's Services Board ("LCCS") filed a motion for permanent custody of Justin K. He was four days old. At the time, LCCS already had temporary custody of Justin's siblings, Jarquis and Javier. LCCS alleged that appellant had failed to complete substantial portions of her case plan. The case plan reflected LCCS's concerns that appellant had not maintained stable housing and that she tends to get involved in physically abusive relationships. A diagnostic assessment indicated that appellant needed a psychiatric evaluation and individual counseling. In addition, one caseworker noted that appellant displayed little understanding of her children's needs. Specifically, the children's hygiene was deficient.
 {¶ 8} A hearing commenced for the permanent custody of Jarquis and Javier on May 30, 2006. The court also heard evidence for the adjudication of Justin. Appellant did not appear. The children's father testified that he wanted to give up his rights to his children.
 {¶ 9} Angela Weiskittle testified that she is a case manager at the Zepf Center, a mental health and substance abuse treatment center. Appellant was one of her clients. LCCS had recommended appellant for anti-depressant medication and counseling. *Page 4 
Weiskittle testified that appellant failed to take her medication and would not keep her appointments at the center. At one point, appellant told Weiskittle that while she wanted her children, she refused to go through with the services offered at the center.
 {¶ 10} Kathy Martin testified that she is a caseworker supervisor with LCCS. She testified that appellant failed to compete the terms of her case plan such as attending therapy and taking her medication. She was also required to attend parenting classes, domestic violence classes and maintain a clean home for her children. Appellant also failed to meet these requirements. Martin testified that it was especially crucial for appellant to maintain a clean home describing appellant's home as "in the top five of bad homes" she had seen in her 22 years with LCCS.
 {¶ 11} Leslie Boag testified that she is the caseworker assigned to appellant's case. She testified that awarding permanent custody of Justin to LCCS would be in the best interest of Justin. LCCS's plan would be to allow Justin's foster parents to adopt him and his two siblings. When asked why appellant was not present at the hearing, Boag said she did not know, noting that appellant knew the hearing was scheduled, as she had contacted Boag regarding the hearing the previous week. Boag testified that appellant had not visited Jarquis and Javier in a year and one-half She recalled that in 2004, appellant contacted the agency and stated she wanted to end visitation with her children and sign her rights to them over to the agency. *Page 5 
 {¶ 12} Following all of the testimony, the court awarded permanent custody of Jarquis and Javier to LCCS.[1] The court then adjudicated Justin dependent and continued the case to July 27 for disposition.
 {¶ 13} On July 27, appellant again failed to appear. Caseworker Leslie Boag testified that the LCCS adoption plan for Justin was for him to be adopted into the same foster family that wished to adopt his siblings. She testified that it was in Justin's best interest to be adopted. According to Boag, appellant had not visited Justin in two months and expressed no interest in seeing him even though the agency had offered her transportation. Additionally, appellant still had failed to complete the requirements of her case plan. The court also heard from Justin's guardian ad litem who recommended that permanent custody of Justin be awarded to the agency.
 {¶ 14} On August 16, 2006, the court awarded permanent custody of Justin to LCCS. Having reviewed the entire record, we proceed to determine whether any arguable issues exist for appeal. Anders,386 U.S. at 744.
 {¶ 15} In his first potential assignment of error, counsel argues that appellant received ineffective assistance of counsel.
 {¶ 16} The right to counsel, guaranteed in juvenile proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. In re Heston (1998), 129 Ohio App.3d 825, 827;Jones v. Lucas Cty. Children Serv. Bd. (1988), *Page 6 46 Ohio App.3d 85. "Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." In re Heston,129 Ohio App.3d 825, 827. See, also, Jones v. Lucas Cty. Children Serv. Bd, supra. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from such performance. State v. Reynolds (1998),80 Ohio St.3d 670, 674, citing Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 17} The record shows that appellant was represented by counsel at the hearing although appellant failed to appear. Her trial counsel explained on the record that appellant had told him she was moving but never gave him a forwarding address and failed to make an appointment with him as he requested. Given appellant's lack of cooperation in her own defense, we cannot say that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from his performance. Counsel's first potential assignment of error is found not well-taken.
 {¶ 18} In his second potential assignment of error, counsel contends that the awarding of personal custody of Justin is against the manifest weight of the evidence.
 {¶ 19} R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that (1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," and (2) that *Page 7 
a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B). With respect to the first requirement, R.C. 2151.414(E) sets forth a list of 16 predicate findings. One of those findings must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E). If a court determines that one of the predicate findings exist, then the court must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with either parent. R.C.2151.414(B)(1). The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. 2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B), In re William S. (1996), 75 Ohio St.3d 95, and will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re S. (1995), 102 Ohio App.3d 338, 344-345.
 {¶ 20} In this case, the court found that appellant had failed to maintain contact with Justin and that she failed to appear for any of the proceedings regarding his custody, that appellant had her parental rights involuntarily terminated pursuant to Justin's siblings and, that she had failed to provide Justin with basic necessities. The court made these *Page 8 
findings pursuant to R.C. 2151.414(E)(4), (10), (11) and (14), respectively.[2] There is clear and convincing evidence in the record to support these findings. Thus, the court properly went on to find that Justin cannot or should not be placed with a parent within a reasonable time.
 {¶ 21} As for determining Justin's best interest, the court found that a legally secure permanent placement cannot be achieved without a grant of permanent custody to LCCS. R.C. 2151.414(B)(4). Here too, there is clear and convincing evidence in the record to support this finding. As a result, we must concur with appellate counsel that the second potential assignment of error is without merit.
 {¶ 22} In his third potential assignment of error, counsel contends that LCCS failed to make reasonable efforts to return Justin to his mother's care.
 {¶ 23} LCCS was required to exercise reasonable efforts to make it possible for Justin to return safely home. R.C. 2151.419(A)(1). At a permanent custody hearing, the *Page 9 
agency seeking custody has the burden of proving it made those efforts. Id. If the trial court makes a determination that these efforts were properly made, it is required in its written finding of facts to "briefly describe * * * the relevant services provided by the agency to the family of the child and why those services did not * * * enable the child to return safely home." R.C. 2151.419(B)(1).
 {¶ 24} In the case before us, clear and convincing evidence of all of the services offered to appellant was presented at trial. The trial court specifically listed these services in its judgment entry and made an express determination that LCCS made reasonable efforts to prevent the need for the removal of Justin from his home and reasonable efforts to prevent the continued removal of this child from his home. Thus, the requisites of R.C. 2151.419 were met in this cause, and counsel's third potential assignment of error is without merit.
 {¶ 25} Based upon the foregoing, we find appellant's parental rights were terminated in accordance with Ohio's statutory system and due process requirements. Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, appellant's appellate counsel properly determined that no meritorious appealable issue existed in this case, and this appeal is without merit and wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted.
 {¶ 26} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights to Justin K. is affirmed. Appellant is *Page 10 
ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] Appellant appealed the award of permanent custody but on September 18, 2006, this court dismissed the appeal as being untimely.
[2] This court has previously expressed concern over the reliance on R.C. 2151.414(E)(4)(11) as sole predicating factor. "A prior adjudication of permanent custody, however, simply should not and does not constitute a de facto termination of parental rights as to later born children. See In re Sheffey, 167 Ohio App.3d 141, 2006-Ohio-619. To allow such an outcome would amount to a violation of parents' basic rights to raise their children. Id. As we noted previously, parents hold a well-established fundamental liberty interest in the care, custody, and management of their children. Santosky v. Kramer (1982),455 U.S. 745, 753. The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state. Id. at 753. `With this in mind, it is evident that a parent maintains those rights as to each and every child born to him or her, regardless of order of birth or prior acts.'" In reSheffey, 167 Ohio App.3d 141, 2006-Ohio-619, ¶ 22. In re Nicholas,169 Ohio App.3d 570, 575, 2006-Ohio-6213. *Page 1