JOURNAL ENTRY AND OPINION
{¶ 1} Appealing from the trial court's grant of permanent custody of his two children to the county, R.H. ("father") claims that the court's decision was not supported by the evidence and that permanent custody was not in the best interest of his children. The children came under county supervision after the younger child tested positive for marijuana at birth on November 27, 2000. At that time, according to the father's testimony, he agreed to move into the children's home and be available as a "twenty-four hour sober caregiver." After discovering that the plumbing was inoperable and the home was not suitable, the county subsequently removed the children from that home, according to the social worker's records in the file. The exact condition of the home is not apparent from the record. Father had also failed to submit to a drug test at that time.
 {¶ 2} In December 2002, father admitted to the amended complaint, which charged that he lacked adequate housing, had not completed the services offered in the case plan, and had failed to submit to a drug and alcohol assessment.[1]
 {¶ 3} Father subsequently tested positive for marijuana and completed a ten-week treatment program. Immediately upon completion of the program, however, he tested positive for marijuana. Although referred for another drug assessment, he failed to comply with this order. He never submitted to further drug testing during the pendency of the case.
 {¶ 4} At the time of the dispositional hearing, father stated he was living between his father's house and his mother's house. His mother's house, which was his mailing address, did not have enough room to accommodate the children.
 {¶ 5} Although the county arranged a visitation schedule for the parents, father's visitation with the children was extremely infrequent. He admitted in testimony at the December hearing that he had not seen the children since May and that he had missed their birthdays. He claimed that his job interfered with visitation because he worked through a temporary agency, which assigned him to evening shift. He had not, however, contacted the social worker to request a different visitation time until the month prior to the hearing. He also never followed up on this request. Additionally, father's testimony showed that he was unemployed for a large portion of the time the children were in custody. His stated reason for failing to visit in that situation was that he was looking for work.
 {¶ 6} Although father missed the majority of his scheduled visits with the children, he did appear at each court hearing on the custody issue. When opposing counsel asked father why he was able to find time to appear at court appearances but not at visitation, father responded that the court might rule against him if he did not show up for court. He went on to say that because the relatives the children stayed with refused to have anything to do with him, it was too difficult to arrange visitation. He did not explain why he was unable to visit with the children at the county center where the visits were scheduled.
 {¶ 7} The children have been in county custody since June 2001. At the time of the December 2003 dispositional hearing, one child was seven and the other three-and-a-half years old. Mother did not appear for the dispositional hearing despite good service on her. Only the social worker for the county and the father testified at the hearing. After the court made its ruling, father timely appealed, stating two assignments of error. The first is:
I. The trial court erred by granting permanent custody to ccdcfs when the decision was not supported by the evidence.
 {¶ 8} Father claims that the evidence does not support the trial court's decision because the state failed to present testimony establishing why the children were removed from the home and what condition was not remedied by the father.
 {¶ 9} R.C. 2151.414 allows a court to grant permanent custody of a child to the county if it determines at a dispositional hearing, by clear and convincing evidence, first, that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, and, second, that permanent custody is in the best interest of the child. Clear and convincing is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Awkal (1994),95 Ohio App.3d 309, fn. 2, citing Lansdowne v. Beacon JournalPublishing Co. (1987), 32 Ohio St.3d 176, 180-181, citing Crossv. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 10} In reviewing a trial court's decision in a permanent custody matter, the appellate court affords great deference to the trial court's decision. The trial court is present to observe the parties and gains knowledge which cannot be conveyed in the written record. Trickey v. Trickey (1952), 158 Ohio St. 9, 13. Unless the trial court abused its discretion, therefore, the appellate court will not overturn its decision. An abuse of discretion requires an arbitrary, capricious, or unreasonable decision. In re Awkal, Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} The trial court's determination of whether the child can or cannot be placed with either parent within a reasonable period of time or should not be placed with either parent is guided by R.C. 2151.414(E). That section states sixteen factors the court may consider in its determination. It provides that if the trial court finds by clear and convincing evidence that any of the sixteen provisions exist, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. Pertinent to the case at bar are the following factors:
(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 12} * * *
 {¶ 13} (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 14} * * *
 {¶ 15} (10) The parent has abandoned the child.
 {¶ 16} Father complains first that the state failed to present evidence to support the need to remove the children from the home. This evidence is not necessary at a dispositional hearing; "The adjudication that the child is an abused, neglected, or dependent child * * * shall not be readjudicated at [dispositional] the hearing * * *." R.C. 2151.414(A). Father admitted to the allegations in the amended complaint and therefore accepted that he was not only aware of the problems leading to the county taking the children but that he admitted that they were true.
 {¶ 17} Next, father complains that the state failed to elicit testimony to support the claim that he failed to remedy the conditions causing the county to take the children. In his own testimony, however, he admitted that he did not have a permanent residence, that he had not been drug tested since his previous positive drug test shortly after the children were removed from the home two years earlier, and had failed to support or regularly visit the children. Father's own testimony, therefore, provided the court with proof of the reasons in subsections 1, 4, and 10. As the court held in its judgment entry, father had "demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so;" "demonstrated an unwillingness to provide an adequate permanent home for the children;" and "consistently failed to comply with referrals for substance abuse treatment" after testing positive for drug abuse "during the pendency of this case." Judgment entry 12-9-03.
 {¶ 18} R.C. 2151.414(E) states that if the court finds any one of the factors listed, it must find that the child cannot or should not be placed with either parent. Here, the court found more than one factor. Father's complaint that the state failed to present sufficient evidence to support an award of permanent custody, therefore, lacks merit. Accordingly, this assignment of error is overruled.
 {¶ 19} For his second assignment of error, father states:
 {¶ 20} The trial court erred in finding that permanent custody rather than legal custody was in the best interest of the children.
 {¶ 21} Father also complains that the state had an obligation to prove that legal custody was not feasible before permanent custody was awarded to the county and all of his parental rights were terminated. He also complains that the court never determined the children's wishes in the custody matter.
 {¶ 22} The best interest of the child is addressed in R.C.2151.414(D), which states that the trial court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 23} Not all the factors need to be present for the court to find that permanent custody is in the best interest of the children. In re Shaeffer Children (1993), 85 Ohio App.3d 683,692. Further, "[t]his court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody." In re C.H. (2003), Cuyahoga App. Nos. 82258 82852, 2003-Ohio-6854 ¶ 34, citations omitted.
 {¶ 24} Although the county had to prove only one factor, its evidence proved several; therefore, the evidence in the case at bar was sufficient to support the court's determination that permanent custody was in the best interest of the children. First, the social worker testified that the children were well adjusted to their placement with their aunt and uncle and did not have a bond with their parents. In fact, the social worker noted, the younger child responds to the aunt as "Mama." The older child was doing well in school and did not exhibit behavior problems except in connection with visitation with the parents. The social worker had gone so far as to arrange for counseling for the older child, but because the parents stopped visiting the children, the counseling was not necessary. The first factor, therefore, favors placing the children in permanent custody so the aunt and uncle can adopt them.
 {¶ 25} The second factor, the wishes of the child, was not addressed. Nonetheless, the court could deduce that the older child's behavior indicated a preference to be adopted. The younger child was not old enough to express a preference. Further, the court is not required to find all the factors in determining that permanent custody is in the best interest of the children.
 {¶ 26} The third factor, the custodial history of the children, also favors permanent custody. At the time of the hearing, the children had been in custody for over twelve months. Additionally, the fourth factor, whether the child's need for a legally secure permanent placement can be achieved without a grant of permanent custody to the county favors permanent custody. The social worker testified that aunt and uncle wished to adopt the children but were not interested in a legal custody arrangement. If the court did not make the children legally available for adoption by taking permanent custody, therefore, their chances for a legally secure permanent placement would be in jeopardy.
 {¶ 27} Finally, the fifth factor, whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 applied, also favors permanent custody to the county. Subdivision 10 lists the parent's abandonment of the child as a factor favoring permanent custody. Abandonment is defined in R.C. 2151.011(C): "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Here, the father did not visit the children from May until the hearing in December, well exceeding the ninety days listed in the statute. That he had, therefore, legally abandoned the children favors a finding that permanent custody is in their best interest.
 {¶ 28} Even without evidence presenting the children's wishes concerning placement, the evidence overwhelmingly supports the court's finding that permanent custody was in the children's best interest. Accordingly, this assignment of error is overruled.
Affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Calabrese, Jr., J., concur.
[1] The remainder of the allegations in the complaint relate to the children's mother, who did not appeal the court's ruling.